IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**CHARYSE DUVALLE**,

    Plaintiff,

vs.                                                              **Civ. No. 10-1023 JCH/RHS**

**SANTA FE TRAILS BUS SYSTEM;**
**DIRECTOR JOHN BULITIS;**
**SUPERVISOR MARQUETTE;**
**MIKE KELLEY,**

    Defendants.

## MAGISTRATE JUDGE'S ANALYSIS
## AND RECOMMENDED DISPOSITION[1]

**THIS MATTER** comes before me on an Order of Reference issued pursuant to 28 U.S.C. §§ 636(b)(1)(B), (b)(3), and *Virginia Beach Fed. Sav. & Loan Ass'n v. Wood*, 901 F.2d 849 (10th Cir. 1990), which directs me to "perform any legal analysis required to recommend to the Court an ultimate disposition" of any motions filed in this case. Doc. 5 at 1. Before the Court is pro se Plaintiff Charyse DuValle's motion seeking authorization to proceed *in forma pauperis* ("IFP") with this litigation, *i.e.*, without prepaying costs or filing fees. *See* Doc. 2. When determining whether to grant permission to proceed IFP, the Court must "review the affidavit and screen [DuValle's] case under 28 U.S.C. §§ 1915(a) and (e)." *Lister v. Dep't of Treasury*, 408 F.3d 1309, 1311 (10th Cir. 2005). Screening the case under § 1915(e) includes determining whether "the allegation of poverty is untrue" as well as determining whether the action "is frivolous or malicious, . . . fails to state a

---

[1] Within fourteen (14) days after a party is served with a copy of this analysis and recommended disposition, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such analysis and recommendation. A party must file any objections within the fourteen-day period allowed if that party wants to have appellate review of the analysis and recommendation. If no objections are filed, no appellate review will be allowed.

claim on which relief may be granted; or [] seeks monetary relief against a defendant who is immune from such relief." § 1915(e). "[I]n order to succeed on a motion to proceed IFP, the movant must show a financial inability to pay the required filing fees, as well as the existence of a reasoned, nonfrivolous argument on the law and facts in support of the issues raised in the action." *Lister*, 408 F.3d at 1312. If the Court determines that "the allegation of poverty is untrue," or that a complaint filed without the prepayment of filing fees fails to state a claim, it must dismiss the case. *See* § 1915(e)(2)(A), (B); *Trujillo v. Williams*, 465 F.3d 1210, 1217 n. 5 (10th Cir. 2006) (noting that dismissal under § 1915(e) is now mandatory).

Regarding the ability-to-pay prong of the IFP analysis, IFP status should be granted only if a plaintiff demonstrates that she "cannot because of [her] poverty pay or give security for the costs . . . and still be able to provide [her]self and dependents with the necessities of life." *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948).

DuValle, who is 50 years old and has no dependents, receives disability payments of $659/month and $70/month in food stamps. *See* Doc. 2 at 2. A "Native American Indian," DuValle pays nothing for rent, mortgage, or utilities. *See id.* at 4, Complaint at 1. Her monthly expenses for necessities include $60 for food, $55 for clothing and laundry, and $43 for additional health or life insurance. *See* Doc. 2 at 4. DuValle lists $213/month as "transportation" costs for her wheelchair[2].

---

[2] I take judicial notice that the city of Santa Fe provides an "ADA Paratransit Service," which provides curb-to-curb service 24 hours/day, 7 days/week, for disabled persons who have difficulty riding the city buses, and which costs $2.00/trip. *See* http://newmexicoresources.org for Santa Fe Public Transportation Paratransit Services resources. The City also provides wheelchair lifts on all of its buses and provides monthly bus passes for the disabled for $10/month. *See id.* under "general information." Based on DuValle's allegations that she refuses to take the paratransit vans and waits for buses, it is unlikely that she makes over 100 trips/month using the vans. I need not hold a hearing on this issue, however, because even if DuValle spends $213 for transportation costs, she still has enough discretionary money left in her budget to pay for filing fees.

On these facts, DuValle has not established that, because of her poverty, she cannot pay both for the necessities of life and for filing fees and, therefore she should not be granted permission to proceed IFP and her case should be dismissed. *See Trujillo*, 465 F.3d at 1217 n. 5;  *Lemons v. K.C. Mo. Police*, No. 05-1254, 158 Fed. App'x 159, 160,  2005 WL 3388580, **1 (10th Cir. Dec. 13, 2005) (stating that, if a court denies a request for IFP status because the plaintiff fails to establish that he is unable to pay fees, the court should dismiss the complaint without prejudice, after which the plaintiff "may initiate a new action by 1) refiling his complaint and 2) paying the [] filing fee required under 28 U.S.C. § 1914 . . . .").

Further, as discussed below, I recommend that the Court instruct DuValle that, if she chooses to pay the filing fees and file another complaint, she must amend her Complaint to name the proper defendant and to present her allegations in a comprehensible manner and in a complaint format instead of attaching letters written to a defendant. *See* FED. R. CIV. P. 8(a); FED. R. CIV. P. 10. In this regard, I recommend that the Court request the Clerk to mail a pro-se instruction packet to DuValle.

DuValle is suing the Santa Fe Trails Bus System, its director John Bulitis, and Ms. Marquette and Mike Kelley, who apparently are supervisors, under "ADA law . . . Civil Rights 3894 . . . 3906 . . . Part 7" and Title II of the ADA. Complaint at 4 (ellipses in original).  Her "Complaint" consists of a letter addressed to Bulitis. *See id.* at 2.  The letter is extremely disjointed and difficult to understand because, despite the fact that DuValle has had three years of college education, *see* Doc. 2 at 5, she expresses herself only in words or phrases separated by ellipses instead of in complete sentences. *See* Doc. 1 at 2-4.

Reading her filings liberally, DuValle seems to allege that drivers and supervisors discriminated against her and "disrespected" her on June 20, 2010, either by ignoring her for 20

minutes while she waited in the heat to board a bus, or by giving others inaccurate information when she wanted to board a bus. *See id.* at 2-3. DuValle states that Don, the driver of the first bus, ignored her and later explained to the transit supervisor that he did not think DuValle wanted his bus. *See id.* DuValle indicates that Jerry, the driver of the second bus, also ignored her, but when he offered to come back to pick her up, the transit supervisor told him that was not necessary because the supervisor was calling a van to transport DuValle. *See id.* at 3. DuValle, however, insisted that she did not want to ride the van - she wanted to ride the bus. *See id.* DuValle contends that the supervisors and drivers need training in complying with the ADA. She states that some drivers had failed to respect her; had "thrown boxes" that belonged to her; "left ramp . . .up 4-7 inches . . . off ground;" "had me go . . . forwards . . . instead backwards;" and did nothing about her complaints. *Id.* at 4 (ellipses in original).

On November 5, 2010, DuValle filed a "supplemental" letter written to Bulitis. In that letter, DuValle complained that she was also "Harassed . . . Mental . . . Emotional Abused" by supervisors and drivers. Doc. 6 at 1 (ellipses in original). In support, she alleges that the wheelchair ramps on certain buses "keep breaking" down "twice . . . three times daily" and have serious mechanical issues, and are not repaired before they are put back in service, in violation of ADA regulations located at 49 C.F.R. Part 37.165. Doc. 6 at 1-2. She further complains that, in July 2010, a bus driver apparently required her to board by driving forward onto the ramp instead of backward, as she prefers. *See id.* at 1. DuValle alleges that the driver did not know how to properly strap her wheelchair onto the bus; that her bags became caught on a ramp or handle; that the lift did not lower her properly; that the bus was old; and that these problems were not fixed, in violation of 49 C.F.R. Parts 37.161 and 37.163. *See id.* at 2. DuValle states that, on July 28, 2010, she was refused access to a bus at 5:50 a.m. because of a broken wheelchair lift. *See id.* When DuValle insisted on riding

that bus, Marquette told her that drivers had seen her walk before, and that if she wanted to ride that bus, she would have to walk on. *See id.* at 2-3. A smaller bus came to pick DuValle up at 6:10 a.m. *See id.* at 3. Later that day, a supervisor told DuValle that she would have to wait 2.5 hours for a bus. *See id.* On July 29, 2010, DuValle again had "issues" with getting a bus in time for a court appearance. *See id.* DuValle complains that she has to wait as long as 2 hours for a bus that can take her. *See id.* at 4.

While DuValle may be able to state a claim for violation of the ADA, *see* 42 U.S.C. § 12143; 49 C.F.R Parts 37.161-37.165; *Tandy v. City of Wichita*, 380 F.3d 1277, 1289 (10th Cir. 2004), she can not state a cognizable ADA claim against the individual Defendants because Title II's prohibition against discrimination applies to "public entit[ies]" and not to individuals. *See* 42 U.S.C. § 12132; *Butler v. City of Prairie Vill., Kan.*, 172 F.3d 736, 744 (10th Cir. 1999) (holding "that the ADA precludes personal capacity suits against individuals who do not otherwise qualify as employers under the statutory definition"). The only proper defendant in DuValle's public-accommodations suit brought under the ADA is the city of Santa Fe.

I recommend that DuValle's motion to proceed IFP [Doc. 2] be DENIED and that her case be DISMISSED without prejudice under § 1915(e)(2)(A).

\_\_Robert Hayes Scott_____
UNITED STATES MAGISTRATE JUDGE